Antonio **PALIAGA**, Plaintiff,

v.

**LUCKENBACH STEAMSHIP COMPANY**, Defendant and Third-Party Plaintiff-Appellant,

v.

**TURNER & BLANCHARD, INC.**, Third-Party Defendant-Appellee.

No. 114, Docket 26896.

United States Court of Appeals Second Circuit.

Argued Dec. 5, 1961.

Decided March 22, 1962.

---

Burlingham, Hupper & Kennedy, New York City (William M. Kimball, William S. Lynch, New York City, of counsel), for defendant and third-party plaintiff-appellant.

Terhune, Gibbons & Mulvehill, New York City (Patrick E. Gibbons, New York City, of counsel), for third-party defendant-appellee.

Before WATERMAN, SMITH and MARSHALL, Circuit Judges.

WATERMAN, Circuit Judge.

Luckenbach Steamship Company, Inc., the defendant and third-party plaintiff below, appeals from an order entered in the United States District Court for the Eastern District of New York denying its motion for the continuance of the trial against Turner & Blanchard, Inc., the third-party defendant, after the plaintiff in the original action, Antonio Paliaga, and the third-party defendant announced while the plaintiff's case was being considered by the jury that plaintiff had accepted a settlement and would voluntarily suffer a discontinuance with prejudice of his case against Luckenbach.

The plaintiff, a longshoreman employed by Turner & Blanchard, brought this action against Luckenbach Steamship Company for injuries he received when a ninety pound carton of petroleum wax fell on him while he was stowing cargo in one of the deep tanks of the defendant's S.S. Edward Luckenbach. The carton that struck the plaintiff fell from a draft which was being lowered into the tank by means of the ship's boom and winches operated by other Turner & Blanchard longshoremen. The draft consisted of a wooden rectangular pallet on which were placed several tiers of cartons secured by ropes. On top of these tiers rested two or three loose cartons. One of these unsecured cartons slid off the draft and hit the plaintiff. The plaintiff asserted that the carton which hit him should have been secured to the draft with tie ropes and that a circular pallet should have been employed to support the cartons instead of the rectangular one which was used.

The plaintiff accused the shipowner of negligence and unseaworthiness.

Under Rule 14 of the Federal Rules of Civil Procedure, 28 U.S.C.A., Luckenbach impleaded the stevedore, Turner & Blanchard, and in this third-party complaint alleged that the stevedore was liable over to the shipowner on theories of negligence, breach of contract, and breach of an implied warranty of indemnity "for all sums that may be adjudged against Luckenbach Steamship Company, Inc., in favor of plaintiff together with costs * * *" The shipowner's demand for judgment did not explicitly include a demand for the recovery of its attorneys' fees and disbursements.

After extensive discovery proceedings, a rather lengthy pre-trial conference, and the issuance of an eighteen page pre-trial order, the third-party claim was tried to the court simultaneously with the trial to a jury of the plaintiff's claim against the shipowner. At the close of all the evidence the district court granted the shipowner's motion to dismiss the plaintiff's claim against it based on the shipowner's alleged negligence, and submitted to the jury the single issue of whether the S.S. Edward Luckenbach was unseaworthy because there had been a failure to secure the loose carton or a failure to use a circular pallet instead of a rectangular one in the draft.

While the jury was deliberating, the attorneys for the plaintiff and for the stevedore, Turner & Blanchard, announced that they were willing to settle the case for $16,000, to be paid by the stevedore. Luckenbach's lawyer reminded the other parties of the shipowner's claim against the stevedore for attorneys' fees and disbursements in defending against plaintiff's claim, a sum that then amounted to about $6,350. Turner & Blanchard temporarily withdrew from its agreement to the previously announced settlement, but shortly thereafter again agreed to settle the plaintiff's claim for the $16,-000. Thereupon counsel moved to discontinue with prejudice plaintiff's action against Luckenbach. Luckenbach objected, fearing that a grant of this motion might prejudice a recovery by it of its claim against Turner & Blanchard for its attorneys' fees; but the court granted the plaintiff's motion and taxed costs of $351.65 against the plaintiff in favor of Luckenbach. The shipowner thereupon moved that its third-party claim against the stevedore for the attorneys' fees and disbursements the shipowner had incurred in defending against the plaintiff's claim continue to be tried to the court. The court denied this motion. It relied first, on the fact that the stevedore, not the shipowner, had settled the plaintiff's claims, second, on the fact that the shipowner's demand for judgment had failed specifically to mention its attorneys' fees, and, third, on the precedent contained in the opinion in Guinto v. California Tanker Co., Civil No. 16397, E.D.N.Y.1960, wherein the court in its discretion had denied a shipowner's motion to amend its prayer for relief against a third-party defendant shipyard so as to include recovery for legal expenses incurred by the shipowner in defending against a similar claim for personal injuries. From the denial of its motion Luckenbach appeals.

The question before us is whether the court below committed error in refusing to proceed with the trial of the shipowner's third-party claim against the stevedore, now reduced to a claim for attorneys' fees and disbursements. Its resolution involves several points of federal procedure and the substantive maritime law of indemnity.

■■ No appeal can be taken to this court from the order below unless the order was a final decision, 28 U.S.C. § 1291 (1958), so we must decide at the outset whether the order denying the third-party plaintiff's motion to proceed with the trial of its claim against the stevedore was such a final decision. The purpose of the rule that a "final decision" is a prerequisite for appealability is to provide the parties with an opportunity for a single review of all the questions raised at the trial level that effectively may be reviewed and corrected and thereby to avoid the waste of time and the delay in reaching trial finality which en-

sue when piecemeal appeals are permitted. To this end we are instructed to give 28 U.S.C. § 1291 a practical, as opposed to a technical, construction. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Neither the use of specific words nor the doing of any particular action by the trial judge is necessary in order to signify that he has made his final judgment. United States v. Hark, 320 U.S. 531, 534, 64 S.Ct. 359, 88 L.Ed. 290 (1944). What is required, however, is that there be some manifestation by the judge that it is his intention that the decision he makes is his final act in the case. United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 232, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958); In re Forstner Chain Corp., 177 F.2d 572 (1 Cir. 1949); see Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923) (quashing summons as final judgment); Brandt v. Renfield Importers, Ltd., 278 F.2d 904 (8 Cir. 1960), cert. denied, 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 226 (1960).

■ By his denial of the shipowner's motion to proceed with the trial of the third-party action after the dismissal of the original action, the judge below surely intended that the litigation before him was at an end. However, the stevedore calls our attention to Sechrist v. Dyke, 256 F.2d 881 (4 Cir. 1958). In that case the Court of Appeals for the Fourth Circuit held that a judgment dismissing a third-party complaint was not a final decision giving rise to appealability. But there the original action was still pending when the court dismissed the third-party complaint. Obviously further proceedings at the trial level were expected. Here, on the other hand, the court's refusal to consider the third-party complaint followed a settlement of the original case.

In Lunn v. F. W. Woolworth Co., 207 F.2d 174 (9 Cir.), cert. denied, 346 U.S. 900, 74 S.Ct. 224, 98 L.Ed. 401 (1953), also cited by the appellee, the Court of Appeals for the Ninth Circuit held that a post-judgment order denying a motion by the plaintiff to amend a judgment in her favor so as to include reasonable attorneys' fees and a sum equal to three times the amount of the jury verdict was not an appealable order. The proper procedure is to appeal from the judgment itself and to assign as error the denial of the post-judgment motion. To like effect were Nealon v. Hill, 149 F.2d 883 (9 Cir. 1945) (petition for rehearing); Bowers v. E. J. Rose Mfg. Co., 149 F.2d 612 (9 Cir. 1945) (motion to set aside the judgment); Donovan v. Jeffcott, 147 F.2d 198 (9 Cir. 1945) (motion to vacate the judgment); Hicks v. Bekins Moving & Storage Co., 115 F.2d 406 (9 Cir. 1940) (motion to vacate an order of dismissal). In Republic Supply Co. v. Richfield Oil Co., 74 F.2d 909 (9 Cir. 1935) it was stated:

"The general rule is that no appeal will lie from an order denying a motion to vacate or modify a judgment, decree, or order. Smith v. U. S. ex rel. Gorlo (C.C.A. [7]), 52 F.(2d) 848; Connor v. Peugh's Lessee, 18 How. 394, 15 L.Ed. 432; In re Gelino's, Inc. (C.C.A. [7]), 51 F.(2d) 875; International Bank v. Securities Corp., 59 App.D.C. 72, 32 F.(2d) 968; Painter v. Union Trust Co. (C.C.A. [6]), 246 F. 240; Willis v. Davis (C.C.A. [6]), 184 F. 889; 3 C.J. p. 521 § 535."

But in the present case, unlike Lunn v. F. W. Woolworth Co., supra, and the other cases cited above, there was no order or judgment that preceded the denial of the shipowner's motion from which it could have appropriately appealed the trial court's refusal to proceed with the third-party claim. Therefore, here, the appeal was timely taken from the denial of the motion to proceed with trial, and as the denial was a final order disposing of the litigation it was an appealable order under 28 U.S.C. § 1291.

The substantive questions we are called upon to decide are: First, does the stevedore have a contractual obligation to reimburse the shipowner for its litigation expenses, even though the stevedore has settled and paid the longshoreman's claim

against the shipowner after trial has begun but prior to a judgment against the shipowner; and, second, if the stevedore does have such an obligation, was it an abuse of discretion in the present case for the trial court to have refused to hear the shipowner's claim for these expenses?

■ It is well established that a stevedore is obligated under its contract with a shipowner to indemnify for any loss incurred by the shipowner as a result of the stevedore's improper stowage or discharge of cargo. This obligation extends to indemnifying the shipowner against liability to a third party and to reimbursing the shipowner for any litigation expenses it bears in defending a suit in which it is found liable to a third party. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Shannon v. United States, 235 F.2d 457 (2 Cir. 1956); A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 256 F.2d 227 (2 Cir. 1958). The stevedore's duty to indemnify the shipowner may arise either from an express clause in their contract, see A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., supra, or from an implied warranty that the stevedore will perform its work with reasonable safety and in a workmanlike manner. See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra; Curtis v. A. Garcia y Cia. Ltda., 272 F.2d 235 (3 Cir. 1959). Luckenbach has pointed out to us several provisions in its contract with Turner & Blanchard, but it concedes, compare Shannon v. United States, supra, that these do not constitute express indemnity clauses:

"Contractor undertakes to faithfully furnish such stevedoring services as may be required upon such vessels as are assigned to the Contractor * * *

"2. * * * the Contractor agrees to include in the commodity rates the following described services:

* * * * * *

"b. Provide all necessary stevedoring labor, * * * also foremen and such other stevedoring supervision as are needed for the proper and efficient conduct of the work.

"6. Equipment:

* * * * * *

"The Contractor is to supply all other cargo handling gear and equipment * * * as needed for efficient stevedoring work."

We are not required to determine whether the stevedore's duty in this case rests on an express indemnity provision or is implicit in the contract. The result is the same. An indemnitee-indemnitor relationship exists between Luckenbach and Turner & Blanchard. See generally Weinstock, The Employer's Duty to Indemnify Shipowners for Damages Recovered by Harbor Workers, 103 U.Pa. L.Rev. 321, 331–42 (1954).

■■ It is for the trier of fact in each case to determine whether the acts of the stevedore brought about the shipowner's liability. See Weyerhaeuser S.S. Co. v. Nacirema Operating Co., supra; cf. United States v. Harrison, 245 F.2d 911 (9 Cir. 1957). The Supreme Court has not given a comprehensive rule for determining what constitutes a breach of the stevedore's warranty. However, it seems clear that if the stevedore fails to use reasonable care in handling either equipment or cargo and this failure results in foreseeable loss to the shipowner by rendering it likely to suit by an allegedly damaged party, such as a shipper, or to suit by an injured seaman, or even to suit by an injured longshoreman in the stevedore's own employ, the stevedore company has breached its obligation to the shipowner under the contract. See Calderola v. Cunard S.S. Co., 279 F.2d 475 (2 Cir.), cert. denied, Cunard S.S. Co. v. John T. Clark & Son, 364 U.S. 884, 81 S.Ct. 172, 5 L.Ed.2d 104 (1960); Smith v. Jugosalvenska Linijska Plovidea, 278 F.2d 176 (4 Cir. 1960); Parenzan v. Iino Kaiun Kabushiki Kaisya, 251 F.2d 928 (2 Cir.), cert. denied, sub nom. International Ter-

minal Operating Co. v. Iino Kauin Kaisha, Ltd., 356 U.S. 939, 78 S.Ct. 781, 2 L.Ed.2d 814 (1958); cf. Ignatyuk v. Tramp Chartering Corp., 250 F.2d 198 (2 Cir. 1957); Reddick v. McAllister Litherage Line Co., 258 F.2d 297 (2 Cir.), cert. denied, McAllister Lighterage Line, Inc. v. John T. Clark & Son, 358 U.S. 908, 79 S.Ct. 235, 3 L.Ed.2d 229 (1958). Inasmuch as the district court in the present case dismissed the plaintiff's negligence claim against Luckenbach, we shall not discuss the effect that a shipowner's own negligence could have upon the liability of a stevedore under the stevedore's warranty. See, generally, Drago v. A/S Inger, 194 F.Supp. 398 (E.D.N.Y.1961). But the question of the unseaworthiness of the S.S. Edward Luckenbach was under consideration by the jury at the time of the announced settlement, and we are told that a stevedore's breach may create the unseaworthiness of a ship or the breach may activate a ship's pre-existing unseaworthy condition, and in either case as a result of the stevedore's operations the likelihood exists of the shipowner's liability to persons who stand in the shoes of seamen. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

[redacted] The next problem, and the most significant one to be dealt with here, is the problem of ascertaining the extent of the recovery a shipowner may obtain from a stevedore held liable on its promise of indemnity when it is found that the stevedore is responsible for injuring a third party, or, as here, its own longshoreman. If under these circumstances the longshoreman obtains a judgment against the shipowner because of the unseaworthiness of the ship, the shipowner is entitled to judgment over against the stevedore; and it is held that as part of the judgment the shipowner may recover from the stevedore a reasonable amount for the attorneys' fees and disbursements which the shipowner has incurred in defending against the longshoreman's claim. A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., supra; Holley v. The Manfred Stansfield, 186 F.Supp. 805 (E.D.Va. 1960); Lilleberg v. Pacific Far East Line, Inc., 167 F.Supp. 3 (N.D.Cal.1958);[1] cf. General Electric Co. v. Mason & Dixon Lines, Inc., 186 F.Supp. 761 (W.D.Va. 1960).

[redacted] Here no judgment was ever entered against Luckenbach. The longshoreman's complaint against the shipowner was dismissed with prejudice, and the stevedore maintains that, as the shipowner has not suffered a judgment, the shipowner may not recover its attorneys' fees and disbursements from the third-party defendant. Several cases have recognized, however, that when it is the shipowner defendant who settles before judgment with the longshoreman plaintiff the stevedore still may be liable over to the shipowner on the stevedore's contractual obligation of indemnification. Waterman S.S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); Shannon v. United States, supra; A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., supra; American President Lines, Ltd. v. Marine Terminals Corp., 234 F.2d 753 (9 Cir.), cert. denied, 352 U.S. 926, 77 S.Ct. 222, 1 L.Ed.2d 161 (1956); Lilleberg v. Pacific Far East Line, Inc., supra. A contrary result that would require the pursuit of the action to a judgment would conflict with the policy, which pervades all areas of the law, of encouraging settlement wherever it is possible. In cases in which the main action has been so settled, it is of course incumbent upon the court which entertains the claim for indemnity to determine before requiring the stevedore to indemnify the shipowner whether it

1. A distinction should be made between the shipowner's attorneys' fees incurred in defending against the longshoreman's claim and those incurred by the shipowner in prosecuting its own claim for indemnification against the stevedore. In the absence of agreement between the shipowner and the stevedore to the contrary, only the former are recoverable from the stevedore. See discussion in Holley v. The Manfred Stansfield, supra.

[redacted]

was reasonable for the shipowner to have entered into the settlement. Chicago, R. I. & Pac. Ry. v. United States, 220 F.2d 939 (7 Cir. 1955); see Lilleberg v. Pacific Far East Line, Inc., supra.

■ There is a difference between the present case and these earlier cases that are cited, supra. Here the stevedore, and not the shipowner, settled and paid the plaintiff longshoreman's claim. This fact should not make any difference in the legal principles which we should apply. By settling directly with the plaintiff the stevedore may not circumvent its contractual obligation to indemnify the shipowner for any loss incurred by the shipowner caused by the stevedore's failure to use proper care.

■ After the stevedore settled the longshoreman's claim, the only issue which remained in dispute between the parties was the shipowner's claim that the stevedore should bear the attorneys' fees and disbursements the shipowner incurred in opposing the longshoreman's claim. These expenses are not insignificant in amount. The longshoreman's claim was settled in the sum of $16,000 after trial but before a verdict was returned. The shipowner claims its attorneys' fees and disbursements amount to $7,001.03. If the shipowner had paid the longshoreman's claim either after a judgment or upon a settlement, it could have recovered its reasonable attorneys' fees and disbursements as part of its claim for indemnity from the stevedore. The shipowner should recover to the same extent when the stevedore has settled the longshoreman's claim after the shipowner has been required to stand trial.

The court below pointed out that Luckenbach's demand for judgment in its third-party complaint was only "for all sums that may be *adjudged* against Luckenbach Steamship Company, Inc., in favor of the plaintiff together with costs * * *" (Emphasis by the district court.) Thus the court was of the opinion that the shipowner had failed to demand its attorneys' fees in the event that the original action were settled prior to judgment. This language does not prevent the recovery by Luckenbach of its attorneys' fees and disbursements. Fed.R.Civ.P. rule 54(c) states:

"(c) Demand for judgment. * * * Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

There remains the question whether it was an abuse of the district court's discretion to refuse to continue on with its trial of the third-party claim by ordering that the shipowner's motion be denied. This order was a dismissal of that claim, and it is recognized that a district court does have discretion to hear or dismiss a third party complaint. Dery v. Wyer, 265 F.2d 804, 809 (2 Cir. 1959) (dictum); Duke v. Reconstruction Fin. Corp., 209 F.2d 204 (4 Cir.), cert. denied, 347 U.S. 966, 74 S.Ct. 777, 98 L.Ed. 1108 (1954); Maryland to Use and Benefit of Wood v. Robinson, 74 F.Supp. 279, 282 (D.Md. 1947). The third-party complaint here was filed two and a half years before the court dismissed it. Just prior to the dismissal there had been a trial lasting eight days during which the district judge had heard evidence relevant to the third-party claim. The evidence at the trial tended to show whether the party responsible for the longshoreman's injury was the shipowner or the stevedore. The district judge was familiar with at least a part of the work of Luckenbach's attorney which would form the basis for the shipowner's claim for the reimbursement of its reasonable attorneys' fees. Although Luckenbach despite this dismissal could have brought an independent action to recover its attorneys' fees and disbursements, such an action would have been subject to the interposition of a possible plea of *res judicata*, to the delays of the court calendar, and to the possible necessity of a retrial of all the issues in the case in order to determine the reasonableness of the stevedore's act in settling before the jury returned with its verdict. This would have given the stevedore lev-

erage in settlement negotiations with the shipowner. Furthermore, no other judge at the outset would be as familiar with the facts of the case and with the rights of the parties flowing therefrom. Therefore, we hold that it was an abuse of the district court's discretion for it to deny the shipowner's motion to continue on with the trial of its claim against the stevedore company.

The order of the court below is reversed and the case remanded for further proceedings not inconsistent with this opinion.